## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## BROWARD DIVISION

| | | |
|---|---|---|
| **JUDITH BREDY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: _____** |
| | ) | |
| **AD1 GLOBAL HOTELS, LLC and** | ) | |
| **AD1 MANAGEMENT, INC.** | ) | |
| | ) | **JURY DEMAND** |
| **Defendants.** | ) | |

### COMPLAINT WITH DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff, Judith Bredy (hereinafter "Plaintiff"), by and through her undersigned counsel, and hereby files this lawsuit against Defendant, AD1 Global Hotels, LLC and Defendant AD1 Management, Inc., (hereinafter collectively "AD1" or "Defendant"), and states as follows:

### JURISDICTION AND VENUE

1. This is an action by Plaintiff, Judith Bredy, for compensatory and punitive damages, declaratory, and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.10 *et. seq.* to redress injury caused by Defendant's disparate treatment based on her gender and retaliation against her protected conduct. This is also an action for compensatory and punitive damages, declaratory, and injunctive relief under Title VII, the FCRA, and under Florida Tort Law.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, Title VII, and 28 U.S.C. § 1367. This Court has supplemental jurisdiction of the Florida Civil Rights Act Claims

and any other state law claims pursuant to 28 U.S.C. § 1367. Declaratory, injunctive, legal and equitable relief is sought pursuant to the laws set forth above to include attorneys' fees, costs, and damages.

3.      Defendant AD1 Global Hotels, LLC was Plaintiff's employer and/or joint employer with Defendant AD1 Management, Inc.

4.      Defendant AD1 Management, Inc., per its position statement to the EEOC, was, "at all relevant times, an employee of AD1 Management, Inc," and was Plaintiff's employer and/or joint employer with Defendant AD1 Global Hotels, LLC.

5.      Defendant AD1 Global Hotels, LLC employs at least fifteen (15) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

6.      Defendant AD1 Management, Inc. employs at least fifteen (15) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

7.      Venue is proper in the Broward Division of the Southern District of Florida (Broward County (28 U.S.C. § 89(c)), because Defendant does business in Broward County, and some or all of the acts alleged herein took place in Broward County.

8.      Defendant's principal place of business is in Broward County, and one of its locations is in Broward County, 1955 Harrison Street, Hollywood, Florida 33020 (the location where Plaintiff worked).

9.      Plaintiff currently resides in Cooper City, Florida.

10.     On or about March 29, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2019-03034. A true and correct copy of Plaintiff's charge is attached hereto as Exhibit "A".

11.     At various times since the filing of the Charge, including via letter dated December 19, 2019, in person on March 5, 2020, and via letter dated April 20, 2020, Plaintiff requested that the EEOC issue the right-to-sue letter. True and correct copies of these letters are attached hereto Exhibit "B." Based on its statements to Plaintiff's counsel, including as memorialized in Exhibit B, the EEOC should be issuing the right-to-sue letter soon, and Plaintiff will file a copy of the right-to-sue with the Court upon receipt.

12.     Upon receipt of the right-to-sue letter which should already have been issued, all conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## GENERAL FACTUAL ALLEGATIONS

13.     Plaintiff is a female.

14.     Plaintiff is a former employee of Defendant.

15.     Plaintiff worked for Defendant at its Hollywood location (address above).

16.     The Hollywood location is Defendant's primary corporate office.

17.     Plaintiff was hired on or about April 22, 2017.

18.     Plaintiff worked for Defendant from April 22, 2017 through her termination on or about March 12, 2019.

19.     Plaintiff worked as Defendant's Corporate Director of Sales.

20.     Plaintiff was and was considered an excellent employee by Defendant.

21.     As an example, during her last performance review, Plaintiff had reached 161% of her projected goals.

22.     Plaintiff was and was considered an excellent employee, at least until she complained internally about discriminatory/disparate treatment by Defendant.

23.     As an example, when hired, Plaintiff was responsible for approximately three hotel properties, including marketing and budgeting planning.

24.     At the time of her termination, that number had grown to over twenty hotel properties, where Plaintiff had the same responsibilities.

25.     Her salary was approximately $140,000.00 annually while working for Defendant.

26.     Mr. Dan Monahan was and is Defendant's Senior Corporate Vice President of Hotel Operations.

27.     Monahan was Plaintiff's immediate supervisor while working for Defendant.

28.     Mr. Cameron Keene was one of Defendant's Revenue Managers; however, he is no longer an employee of Defendant.

29.     Mr. John Sterk was and is one of Defendant's Revenue Managers.

30.     Mr. David Fernandez was and is Defendant's Regional Director of Operations.

31.     Ms. Beth Cordoves was and is Defendant's Corporate Vice President of Human Resources.

32.     On information and belief, Mr. Adam Leon replaced Plaintiff.

33.     At the time of her hire, Defendant's agents told Plaintiff that she was eligible for and would receive a performance-based bonus after one-year of employment; however, Plaintiff never received the performance-based bonus.

SALAS LAW FIRM, P.A.

34.     Defendant told Plaintiff she was entitled to a raise occurring annually and her understanding is that her raise was to take effect on March 13 or 15, 2019, the day after or days after she was told she was terminated.

35.     No such bonus was paid and Plaintiff's annual salary raise for 2019 never went into effect.

36.     Plaintiff's understanding is that the annual raise would have been about 20% of her annual salary (or around $25,000-$30,000).

37.     During the course of her employment, Defendant, through its agents like Monahan, treated Plaintiff differently than males in the terms and conditions of their employment, including concerning pay and bonuses.

38.     During the course of her employment, Defendant, through its agents like Monahan, treated Plaintiff differently than males in the terms and conditions of their employment, including concerning day-to-day treatment of females in meetings and concerning presenting their opinions.

39.     For example, when Plaintiff would express an opinion that was different from and/or perhaps could be considered different from a male, including males like Monahan, Cameron Keene and David Fernandez, Monahan told Plaintiff that he did not care about her opinion.

40.      For example, when Plaintiff would express an opinion that was different from or perhaps could be considered different from a male's opinion, including males like Monahan, Keene, and Fernandez, Monahan repeatedly threatened her employment telling Plaintiff if she believed her opinions so strongly, that  Defendant should or would terminate her (*e.g.* "If you think that way, this [meaning my employment with Defendant] is not going to work").

41.     Defendant, through its agents like Monahan, placed Plaintiff in an untenable situation, either keep her job without the ability or with a hampered ability to provide informed

opinions to my colleagues or superiors, or, to provide her opinions (a part of her job) and ostensibly be fired based on Monahan's warning.

42.     Defendant, through its agents like Monahan, did not disparage, discipline, or counsel males for expressing opinions in the workplace, but rather openly approved and valued them, and (at least) did not disparage them or discourage them from expressing their opinions.

43.     In late 2018, Monahan called Plaintiff into his office with Cordoves (HR) present.

44.     Monahan asked for Plaintiff's opinion on merging two management positions (General Manager and Director of Sales) into one position at one of Defendant's properties.

45.     Plaintiff told Monahan that "she did not think it was a good idea" at that time, because of the needs of the particular property, including because it needed to devote resources to increasing occupancy.

46.     Monahan became agitated, including raising his voice, and exclaiming: "it never works! You're never open to anything! Fine, whatever."

47.     Cordoves then followed Plaintiff to Plaintiff's office, and demanded to know "how Plaintiff was feeling toward Monahan."

48.     Plaintiff told Cordoves that she felt Monahan's statements and volume were inappropriate in the meeting.

49.     Plaintiff told Cordoves that she felt concerned Monahan was going to retaliate against her for expressing opinions and/or for involving HR.

50.     Plaintiff also told Cordoves that Monahan repeatedly threatened Plaintiff with termination when she expressed an opinion.

51.     Defendant did not get back to Plaintiff after this meeting, including neither Monahan nor Cordoves.

52.     During this occasion and others, when Plaintiff spoke to Cordoves about Monahan, Cordoves told Plaintiff that this was "not a formal complaint."

53.     Cordoves told Plaintiff that "she could not do anything," including not speaking to Monahan about her concerns, unless and until Plaintiff said she was filing a "formal complaint."

54.     Cordoves also told Plaintiff that "she would not and did not document anything" concerning their meetings.

55.     Plaintiff believes that Defendant, via Cordoves, raised the issue of "formal" versus "informal" complaint to discourage Plaintiff, to avoid creating documentation concerning the meeting, and to avoid starting an investigation.

56.     Defendant, including by Cordoves's refusal to investigate her claims and/or create ambiguous or artificial justifications to avoid investigating, treated Plaintiff less favorably than other employees who complained and/or ignored Defendant's own internal policies by HR's handling of the situation.

57.     Plaintiff did not make a "formal" complaint with HR, per Cordoves's definition, until on or about February 26, 2019 (below).

58.     On February 21, 2019, Plaintiff was in Greenville, South Carolina on a conference call with Defendant's South Carolina Wyndham Hotel.

59.     Ms. Crystal Morey (General Manager of Defendant's Greenville, South Carolina hotel), was there with Plaintiff in person, with Fernandez and Keene appearing on the phone.

60.     The reason for the call was a personnel issue concerning the resignation of Mr. Steven Umphlet (Director of Sales), who had resigned earlier that day.

61.     On the call, Fernandez blamed Plaintiff for Umphlet's resignation, including being condescending toward Plaintiff on the call, even though Plaintiff was not responsible for the situation.

62.     Fernandez told Plaintiff that she was to blame for hiring and retaining Steven Umphlet, including that Plaintiff failed to do her job in training Umphlet and that was the reason for him quitting.

63.     These statements by Fernandez were untrue and unprofessional, and caused Plaintiff emotional distress, particularly in front of other executives with whom her reputation, prestige, and future with the company at least partially rested.

64.     That same day, Plaintiff called and complained to Monahan about Fernandez's behavior during the call.

65.     Monahan told Plaintiff he would look into it; however, that he would only ask Keene and not Morey.

66.     On February 25, 2019, having not been contacted by Monahan, Plaintiff asked him about Fernandez's treatment of her, *i.e.* what had come of Monahan's efforts and/or investigation.

67.     Monahan stated that his findings regarding the conversation were different than Plaintiff's statements.

68.     Monahan stated that he did not have any update on Plaintiff's complaints.

69.     Per Plaintiff's impressions, Monahan did not seem to care or to take her complaint about Fernandez seriously, including telling Plaintiff "just get along, and don't be the victim."

70.     Plaintiff asked Monahan "why Fernandez's behavior was allowed?  Is it because I'm a woman?"

71.     Monahan responded abruptly, "oh please."

SALAS LAW FIRM, P.A.

72.     Monahan then told Plaintiff that if she "did not avoid being a victim, [he] will bring both of us into his office and one of us will be terminated."

73.     Plaintiff believes Monahan was threatening her job and that if that proposed meeting occurred, Plaintiff, not Monahan, was the "one" that would be terminated.

74.     The next day, February 26, 2019, Plaintiff went to HR and complained.

75.     Plaintiff complained to Cordoves that she felt she was being discriminated against in the terms and conditions of her employment based on her gender or that Plaintiff thought she was suffering from a hostile work environment (gender), including because of Fernandez's behavior and Monahan's nonresponsive and discriminatory statements when Plaintiff complained to him about Fernandez.

76.     Cordoves told Plaintiff that she "will speak to Monahan and we will handle it."

77.     Defendant did nothing to "handle" the complaints, including no conversation with Monahan or any investigation.

78.     In reality, Defendant "handled' Plaintiff's complaint by terminating her soon after.

79.     On March 7, 2019, Plaintiff noticed that her position with Defendant had been posted on "hcareers.com."

80.     That day, Plaintiff notified Monahan of the posting.

81.     Monahan told Plaintiff that HR insisted her position be posted as a precaution in case Plaintiff resigned and told her "just get along, and don't be the victim."

82.     Monahan also told Plaintiff to "go have a glass of wine and calm down."

83.     Plaintiff was noticeably upset after speaking to Monahan, including crying.

84.     Plaintiff then went to HR, crying about the job posting, and Cordoves told her that the position was posted as a precaution.

85.     Plaintiff believes Defendant's failure to investigate Plaintiff's internal complaint coupled with Monahan's obnoxious response to go have a glass of wine and calm down, were further instances of discrimination, motivated by Plaintiff's gender.

86.     On March 10, 2019, Monahan (via text message) told Plaintiff to come to the office instead of going to Greenville, South Carolina as previously scheduled.

87.     Plaintiff was called into Cordoves's office with Nidia l/n/u (Recruitment Manager) present and was told she was terminated.

88.     Plaintiff asked why.

89.     Cordoves told Plaintiff it was because "the owners feel that you are unhappy."

90.     No other reason was stated by Respondent.

91.     Plaintiff believes this reason, and/or any other purported legitimate reason for Defendant's termination decision is, in reality, a pretext for unlawful discrimination, motivated by her gender.

92.     In its position statement with the EEOC, Defendant claims Plaintiff's employment "was terminated for legitimate business reasons, including but not necessarily limited to, her purported dissatisfaction with her employment, her repeated threats to quit and her stated refusal to report to certain individuals should AD1's corporate reorganization result in an alternative chain of command deemed unacceptable to [Plaintiff]."

93.     Defendant's inconsistent, shifting, and/or changing reasons for its actions toward Plaintiff are not legitimate, but rather, are unworthy of credence and are, in reality, pretextual.

94.     Plaintiff's beliefs concerning Defendant's disparate treatment of her, as compared with males, also arises from its agents' treatment of other females.

95.     For example, Monahan also engaged in inappropriate behavior concerning other females in front of Plaintiff, like Biljana Djokovic (Regional Director of Sales), including Monahan's statement: "who the hell is she to give an opinion [regarding work issue], this isn't high school."

96.     Fernandez would also make false or condescending statements about female managers in front of their subordinates, including arguing with a maid-employee working for Defendant at a South Carolina property, telling the maid that Morey was not doing a good job, including the statement, if you think Morey is doing a good job, it is because "you haven't worked for me darling."

97.     Other employees, including Monahan, would also make unprofessional and/or odd comments about or toward Plaintiff at work, such as "how many clothes do you own?"

98.     Other employees, including Monahan, would also make unprofessional and/or odd comments about or toward Plaintiff at work, such as "how many shoes do you own?"

99.     Other employees, including Monahan, would also make unprofessional and/or odd comments about or toward Plaintiff at work, "I bet you take a lot of suitcases with you when you travel."

100.    Other employees, including Monahan, would also make unprofessional comments about or toward Plaintiff at work, such as "you're losing weight?" and she looked "too professional."

101.    At some point during her employment, likely in 2018, Plaintiff had a conversation with Monahan about a potential promotion to Vice President of Sales and Marketing, where Plaintiff asked to be considered for the position/promotion.

102.    Monahan responded to Plaintiff, "oh honey, please, before you could have that position, I would have to be promoted to COO, because otherwise we would be equal."

103.    On many occasions, Monahan, in response to some of Plaintiff's submitted budgeting/marketing work, told her "Did you really do that work? To be truly honest, I did not think you were that smart."

104.    By comparison, comparator males (including Fernandez, Keene, Leon and/or Sterk) were not presented with condescending comments when providing excellent work, but instead praised, further demonstrating to Plaintiff that females were treated less favorably than males in the terms and conditions of their employment.

105.    Defendant, through statements of its agents like Monahan's, demonstrate that its purported legitimate reasons for its actions, are, in reality, are pretextual and Defendant intentionally sought to keep females in lesser positions and not "equals" to males.

106.    Defendant's treatment of Plaintiff caused her great emotional distress, for which she consulted with her primary physician, who prescribed her medication, including for the purpose of treating Plaintiff's panic attacks at work which happened frequently.

107.    Plaintiff has sufficient evidence and/or will present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that her gender was factor or a motivating factor(s) for Defendant's discriminatory and retaliatory termination.

108.    Plaintiff is entitled to and alleges Defendant is liable to her for damages under a mixed motive theory, and, to the extent necessary, alleges that it is so liable.

109.    Defendant is or may be liable to Plaintiff under the "cat's paw" theory of vicarious liability and, to the extent necessary, alleges that it is so liable.

### Count I – Title VII Disparate Treatment (Gender) – Termination[1]

110.    Plaintiff realleges all of the preceding paragraphs of this complaint.

111.    Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII.

112.    Plaintiff is a member of a protected class, gender, female.

113.    Plaintiff was qualified for her position.

114.    Plaintiff suffered an adverse employment action(s), termination on March 10, 2019. To the extent Plaintiff suffered other written or oral discipline relied upon by Defendant in connection with her termination, Plaintiff alleges that this previous discipline constitutes an adverse employment action, including because it resulted in more formal or further discipline, including termination of employment.

115.    Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including those males named in the complaint, her replacement, and other male comparators presently unknown, were treated more favorably than her in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, "owners feel that you are unhappy") not resulting in termination of employment.

116.    Defendant intended to discriminate and did discriminate on the basis of gender and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined and terminated her and not similarly situated persons (*e.g.* Fernandez, Keene, Leon, Sterk).

---

[1] To the extent necessary, Plaintiff's claims herein are pled in the alternative.

SALAS LAW FIRM, P.A.

117.    Defendant's discrimination concerned one or more of the activities enumerated in Title VII.

118.    As a result of the aforementioned conduct, Defendant violated Title VII.

119.    Any purported legitimate reason for Plaintiff's termination and/or discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

120.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being terminated (and/or disciplined resulting in further discipline (termination)) and was damaged.

121.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

122.    Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendant.

123.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count II – FCRA Disparate Treatment (Gender) – Termination

124.    Plaintiff realleges and incorporates paragraphs 1-109 as if fully set forth herein.

125.    Plaintiff has completed all necessary pre-requisites to bringing her claims under the FCRA.

126.    Plaintiff is a member of a protected class, gender, female.

SALAS LAW FIRM, P.A.

127.   Plaintiff was qualified for her position.

128.   Plaintiff suffered an adverse employment action(s), termination on March 10, 2019. To the extent Plaintiff suffered other written or oral discipline relied upon by Defendant in connection with her termination, Plaintiff alleges that this previous discipline constitutes an adverse employment action, including because it resulted in more formal or further discipline, including termination of employment.

129.   Plaintiff was replaced by a person(s) outside of her protected class; and/or similarly situated comparator employees, including those males named in the complaint, her replacement, and other male comparators presently unknown, were treated more favorably than her in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, "owners feel that you are unhappy") not resulting in termination of employment.

130.   Defendant intended to discriminate and did discriminate on the basis of gender and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined and terminated her and not similarly situated persons (*e.g.* Fernandez, Keene, Leon, Sterk).

131.   Defendant's discrimination concerned one or more of the activities enumerated in the FCRA.

132.   As a result of the aforementioned conduct, Defendant violated the FCRA.

133.   Any purported legitimate reason for Plaintiff's termination and/or discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

SALAS LAW FIRM, P.A.

134.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being terminated (and/or disciplined resulting in further discipline (termination)) and was damaged.

135.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

136.    Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendant.

137.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count III – Title VII Retaliation

138.    Plaintiff realleges and incorporates paragraphs 1-109 as if fully set forth herein.

139.    Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII.

140.    Plaintiff suffered adverse employment actions by at least Defendant not starting an investigation into her internal complaints of discrimination in February 2019 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by not having complaints characterized by HR as "informal" or "formal" in an effort to discourage her internal complaints and/or by having someone get back to the complaining party after complaining about the status/resolution of the investigation) and by not being terminated soon after complaining (less than two weeks between "formal" complaint on February 26, 2019 and termination).

141.    Plaintiff engaged in a statutorily protected activities, including at least complaining to Cordoves about Monahan's treatment of her in early February 2019 and the complaint on February 26, 2019.

142.    Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by treating her unfairly, unjustly, inaccurately, and inconsistently after she complained to Cordoves, by not conducting an investigation and by terminating her employment.

143.    There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment in discipline and her termination.

144.    Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation, including based on temporal proximity between the complaints and termination.

145.    As a result of the aforementioned conduct, Defendant violated Title VII.

146.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline/termination after she complained, resulting in her suffering injury and being damaged.

147.    Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

148.    Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

149.    As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

## Count IV – FCRA Retaliation

150.    Plaintiff realleges and incorporates paragraphs 1-109 as if fully set forth herein.

151.    Plaintiff has completed all necessary pre-requisites to bringing her claims under the FCRA.

152.    Plaintiff suffered adverse employment actions by at least Defendant not starting an investigation into her internal complaints of discrimination in February 2019 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by not having complaints characterized by HR as "informal" or "formal" in an effort to discourage her internal complaints and/or by having someone get back to the complaining party after complaining about the status/resolution of the investigation) and by not being terminated soon after complaining (less than two weeks between "formal" complaint on February 26, 2019 and termination).

153.    Plaintiff engaged in a statutorily protected activities, including at least complaining to Cordoves about Monahan's treatment of her in early February 2019 and the complaint on February 26, 2019.

154.    Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by treating her unfairly, unjustly, inaccurately, and inconsistently after she complained to Cordoves, by not conducting an investigation and by terminating her employment.

155.    There is or are a casual connection(s) between Plaintiff's complaints of disparate treatment in discipline and her termination.

156.    Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation, including based on temporal proximity between the complaints and termination.

157.    As a result of the aforementioned conduct, Defendant violated Title VII.

SALAS LAW FIRM, P.A.

158.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline/termination after she complained, resulting in her suffering injury and being damaged.

159.    Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

160.    Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

161.    As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count V – Title VII (Failure to Investigate)

162.    Plaintiff realleges and incorporates paragraphs 1-109 as if fully set forth herein.

163.    Plaintiff has completed all necessary pre-requisites to bring his claims under Title VII.

164.    Plaintiff engaged in statutorily protected activities, including complaining in February 2019 on several occasions of disparate treatment and/or discrimination to HR (Bertha Cordoves).

165.    Plaintiff believed that her protected activity / complaint would be investigated by Defendant, including because it is Plaintiff's understanding this is the appropriate response by Defendant pursuant to its own policies.

166.    Plaintiff suffered adverse employment action(s), Defendant's failure to investigate her "informal" complaints of discrimination, then failing to investigate her "formal" complaint of

discrimination in retaliation for Plaintiff's previous complaints, as well as her retaliatory termination less than two weeks later.

167.    There is or are a casual connection(s) between Plaintiff's complaint to Cordoves and Defendant's failure to investigate and its termination of Plaintiff.

168.    Defendant intended to retaliate and did retaliate on the basis of Plaintiff's repeated complaints (informal and formal) and/or because Plaintiff filed an internal complaint of discrimination.

169.    As a result of the aforementioned conduct, Defendant violated Title VII.

170.    Any purported legitimate reason for non-investigating and/or its handling of Plaintiff's complaint and termination are, in reality, pretext(s) for unlawful retaliatory treatment

171.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in Defendant's failure to investigate her claims and her retaliatory termination.

172.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

173.    Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendant.

174.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### **Count VI – Title VII Disparate Treatment (Gender) - Failure To Promote**

175.    Plaintiff realleges and incorporates paragraphs 1-109 as if fully set forth herein.

176.   Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII.

177.   Plaintiff is a member of a protected class, female.

178.   Plaintiff was qualified for the promotion position, Vice President of Sales and Marketing.

179.   Plaintiff applied for and/or attempted to apply for the Vice President position.

180.   Plaintiff was rejected despite her qualifications.

181.   Plaintiff believes the rejection was motivated by her gender, including by Monahan's statement in response to her attempt at promotion, stating: "oh honey, please, before you could have that position, I would have to be promoted to COO, because otherwise we would be equal."

182.   The person promoted or hired into the Vice President of Sales and Marketing position was a person(s) outside of Plaintiff's protected class (i.e. a male(s)); and/or similarly situated comparator employees, including those males named in the complaint, and other male comparators presently unknown, were treated more favorably than her in the terms and conditions of their employment, including by not being refused consideration from the promotion position.

183.   Defendant intended to discriminate and did discriminate on the basis of gender and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it failed to promote her.

184.   Defendant's discrimination concerned one or more of the activities enumerated in the Title VII.

185.   As a result of the aforementioned conduct, Defendant violated Title VII.

186.    Any purported legitimate reason for Plaintiff's non-promotion given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

187.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by not being promoted, not receiving the associated pay increase, and was damaged.

188.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

189.    Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendant.

190.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count VII – FCRA Disparate Treatment (Gender) - Failure To Promote

191.    Plaintiff realleges and incorporates paragraphs 1-109 as if fully set forth herein.

192.    Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII.

193.    Plaintiff is a member of a protected class, female.

194.    Plaintiff was qualified for the promotion position, Vice President of Sales and Marketing.

195.    Plaintiff applied for and/or attempted to apply for the Vice President position.

196.    Plaintiff was rejected despite her qualifications.

197.    Plaintiff believes the rejection was motivated by her gender, including by Monahan's statement in response to her attempt at promotion, stating: "oh honey, please, before you could have that position, I would have to be promoted to COO, because otherwise we would be equal."

198.    The person promoted or hired into the Vice President of Sales and Marketing position was a person(s) outside of Plaintiff's protected class (i.e. a male(s)); and/or similarly situated comparator employees, including those males named in the complaint, and other male comparators presently unknown, were treated more favorably than her in the terms and conditions of their employment, including by not being refused consideration from the promotion position.

199.    Defendant intended to discriminate and did discriminate on the basis of gender and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it failed to promote her.

200.    Defendant's discrimination concerned one or more of the activities enumerated in the Title VII.

201.    As a result of the aforementioned conduct, Defendant violated Title VII.

202.    Any purported legitimate reason for Plaintiff's non-promotion given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

203.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by not being promoted, not receiving the associated pay increase, and was damaged.

204.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

205.    Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendant.

206.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count VIII – Title VII Disparate Treatment (Gender) – Pay

207.    Plaintiff realleges and incorporates paragraphs 1-109 as if fully set forth herein.

208.    Plaintiff has completed all necessary pre-requisites to bringing her claims under Title VII.

209.    Plaintiff is a member of a protected class, female.

210.    Plaintiff was qualified for her position.

211.    Plaintiff suffered an adverse employment action(s), being paid less than male(s) for comparable work or relatively equal work.

212.    Similarly situated comparator employees, including those males named in the complaint, her replacement, and other comparator males presently unknown (such as other directors, including those with less responsibility concerning managing hotels/marketing), were treated more favorably than her in the terms and conditions of their employment, including by receiving more money for comparable work or relatively equal work.

213.    Defendant intended to discriminate and did discriminate on the basis of gender, and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it paid her less than males for comparable work or relatively equal work.

214. Defendant's discrimination concerned one or more of the activities enumerated in Title VII.

215. As a result of the aforementioned conduct, Defendant violated Title VII.

216. Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

217. As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by not being paid as much as males for comparable work or relatively equal work.

218. Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

219. Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on her gender and/or that the violations of her rights were continuing in nature by Defendant.

220. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count IX – Equal Pay Act – Discriminatory Compensation

221. Plaintiff realleges and incorporates paragraphs 1-109 as if fully set forth herein.

222. Plaintiff is a member of a protected class under the Equal Pay Act of 1963, 29 U.S.C. § 206 *et seq.*

223.     Defendant pays different wages and/or bonuses to male directors as compared with female directors concerning equal work for jobs, the performance of which, requires equal skill, effort, and responsibility, which are performed under substantially similar working conditions.

224.     Defendant's reason for the discriminatory compensation scheme was not based on a seniority system.

225.     Defendant's reason for the discriminatory compensation scheme was not based on a merit system.

226.     Defendant's reason for the discriminatory compensation scheme was not based on a system which measures earnings by quantity or quality of production.

227.     Defendant's reason for the discriminatory compensation scheme was not based on any factor other than sex.

228.     Similarly situated comparator employees, including those males named in the complaint, her replacement, and other comparator males presently unknown (such as other directors or managers), were treated more favorably than her in the terms and conditions of their employment, including by receiving more money for substantially similar work.

229.     Defendant intended to discriminate and did discriminate on the basis of gender, and/or Plaintiff's protected characteristic, female, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it paid her less than males for substantially similar work.

230.     Defendant's discrimination concerned one or more of the activities enumerated in the EPA.

231.     As a result of the aforementioned conduct, Defendant violated the EPA.

232.   Any purported legitimate reason for Plaintiff's pay or bonus pay being less than comparator males, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

233.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by not being paid as much as males for substantially similar work.

234.   Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

235.   Plaintiff further alleges that she suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on her disparate pay and/or that the violations of her rights were continuing in nature by Defendant.

236.   As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant a permanent injunction enjoining Defendant its officers, successors, assigns and all persons in active concert or participation with it, from engaging in discriminatory and retaliatory practices in violation of the law, as well as appropriately fashioned equitable relief aimed at preventing future discrimination and retaliation;

(b)  Award Plaintiff judgment against Defendant for compensatory damages as determined by the trier of fact;

(c)  Award Plaintiff all restitution and other damages, including pre- and post-judgment interest, for the benefits she would have received absent the retaliatory treatment;

(d)  Enter judgment for punitive damages against Defendant; and,

(e)  Award all reasonable attorneys' fees and costs incurred in connection with this action;

and any other further relief as justice may require.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 4th day of May, 2020.

//s//Michael G. Green II, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email:  michael@jpsalaslaw.com
Fla. Bar. No. 60859

//s//John P. Salas, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: jp@jpsalaslaw.com
Fla. Bar. No. 87593